# FILED

FEB - 8 2007
02-8-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07CV759**
**JUDGE GUZMAN**
**MAG. JUDGE ASHMAN**

Bruce Crosthwaite,

Plaintiffs,

vs.

Konica Minolta,

Defendant.

COMPLAINT AND
JURY DEMAND

Plaintiff, by and through his attorneys, Michael A. Johnson and Clayton D. Halunen of Halunen & Associates, complaining of Defendant, alleges:

## JURISDICTION AND VENUE

1.      This is an action brought to remedy gender discrimination and retaliation which resulted in the alteration of the terms and conditions of Plaintiffs' employment and to remedy injuries suffered by the Plaintiffs pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et. seq.* ("Title VII").

2.      Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. 2000e (f) and (f) *et. seq.*

3.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. Sec. 2000e-(b) and 28 U.S.C. Sec. 1331.

4.      Plaintiff has exhausted all administrative remedies.   Plaintiff has been issued Right to Sue letters from the EEOC for his charges of discrimination and retaliation.

PARTIES

5. Plaintiff Bruce Crosthwaite is a male who resides in the County of DuPage, State of Illinois.

6. Defendant Konica Minolta, upon information and belief, is an Illinois corporation and is subject to jurisdiction by this Court. Defendant is an employer as defined by Title VII.

FACTS

7. Plaintiff was hired by Konica Minolta Business Solutions on or about August 30, 2004 as a Print Production Specialist. His duties included calling on all commercial printers, quick printers, graphic arts shops, and mail houses and selling KMBS equipment and services.

8. Plaintiff reported directly to Mickey Smith- Manager of Major Accounts. Mr. Smith reported to Armen Biberian- Business General Manager.

9. After approximately 8 weeks of employment it became apparent to Plaintiff that Mr. Biberian had a relationship with one of his direct reports, Dana Drury. Through conversations with other employees, Plaintiff discovered the relationship had been going on for a number of years.

10. Plaintiff's assignment was unique in the company in that he was hired to call on a vertical market as defined by KMBS corporate. Plaintiff's newly created position was the only position in the company to call on a vertical market. After his start date Plaintiff was notified by Mr. Biberian that he would not be allowed to solicit all designated accounts in his vertical market. Of the 70+ people around the United States who shared Plaintiff's title, he was the only specialist who was restricted in this manner. Mr. Biberian instead allowed many of Plaintiff's accounts to remain under the jurisdiction of other sales teams. Ms. Drury was the primary beneficiary of this decision.

11.     At a March 8, 2006 branch meeting, Mr. Biberian required the entire KMBS workforce to watch a 20 minute slide show highlighting the 10 year employment anniversary of Ms. Drury.  Knowing the relationship Mr. Biberian had with Ms. Drury, Plaintiff and others found the episode to be extremely inappropriate.  Furthermore, Mr. Biberian re-assigned a valuable support person, digital support specialist Steve Hart, to create this slideshow in lieu of his normal duties.  This re-assignment of Mr. Hart to perform these duties directly affected Plaintiff's ability to perform his job.   It is estimated that Mr. Hart spent over 40 hours creating the slide show celebrating Mr. Biberian's girlfriend.

12.     On March 9, 2006 Plaintiff complained to his manager,   Mr. Smith, that the Biberian-Drury relationship was adversely affecting Plaintiff's ability to perform his job, including generating sales that were taken from him. Furthermore, Plaintiff voiced his objections of Mr. Biberian forcing staff to watch the inappropriate slideshow celebrating his girlfriend.  Finally, Plaintiff voiced his objections of Mr. Biberian inappropriately assigning his support staff to create the slideshow.   Plaintiff advised Mr. Smith that he would no longer sit by and pretend the relationship between Mr. Biberian and Ms.Drury did not negatively affect his job, specifically costing Plaintiff thousands of dollars in sales as a result of his accounts being given to Ms. Drury.

13.     On March 14, 2006,  5 days after Plaintiff's objections to Mr. Smith, he was issued by a Written Warning citing "behavior/conduct infraction" and "poor attitude".  The written warning did not specifically state what the "behavior/conduct infraction" was or when it took place.  The supposed transgressions were completely fabricated.   Interestingly, several weeks later Plaintiff won a national award for sales performance for the month of March.

3

Further, Plaintiff was highly ranked nationally in the sales category for the entire 2005 fiscal year.

14.     On or about April 1, 2006 while working at his desk performing his duties, Plaintiff overheard loud yelling and screaming throughout the branch coming from Mr. Biberian directed towards Mike Mattson.   Seconds later, Mr. Bibetian shouted, "if Bruce does not like it, he can get the fuck out of here".   As Plaintiff was the only Bruce in the office, he immediately became concerned.  He looked around and several co-workers looked at him and asked "what did you do"?  Later that day, Plaintiff sent Mr. Biberian an email questioning his using my name in such a fashion.  A few minutes later, Mr. Biberian came to Plaintiff's desk and asked to speak with him.  The two walked into Mr. Smith's office (which was un-occupied at that moment). Plaintiff tried to shut the door behind him but Mr. Biberian instructed Plaintiff to leave the door open.  He informed Plaintiff that he read his email and then claimed he could say anything he wanted about any subject he chose and that it was nobody's business but his because it was "my office to run as I choose".   Plaintiff again attempted to shut the door to the office but was ordered by Mr. Biberian to keep it open.   Plaintiff requested that Mr. Biberian not use his name in such a way.

15.     On April 12th, 2006, Plaintiff met with the EEOC to report the retaliation.

16.     On May 2nd, 2006 as a reward for his outstanding performance, Mr. Smith treated Plaintiff and three of his co-workers to a day at Wrigley Field.  Before the game started, the group ran into a co-worker, Shannon Thompson, who had taken the day off work to attend the game with her African-American boyfriend.  Shortly after leaving Ms. Thompson, Mr. Smith made the comment "Shannon likes her meat from the other side of the turkey".  Plaintiff was appalled by the comment.  One of our party suggest we "not go there" the subject

4

changed.

17.     On May 3rd, 2006 Mr. Biberian and Mr. Smith were made aware of the complaint Plaintiff filed with the EEOC. From this point forward, Plaintiff was subjected to hostility, scrutiny and criticism. Plaintiff was isolated from the management team and not invited to lunch meetings. His boss stopped returning his phone calls relating to work issues and began reprimanded Plaintiff for anything he could think of. Finally Mr. Smith, for no apparent reason, suggested that Plaintiff find a new job.

18.     On or about May 21st, 2006 Plaintiff attempted to contact Don Warwick, Vice President of Human Resources, to report Mr. Smith's inappropriate comment made at the baseball game. Due to scheduling problems, Mr. Warwick and Plaintiff were not able to speak until approximately June 6th, 2006. Plaintiff informed Mr. Warwick about Mr. Smith's conduct. Mr. Warwick immediately cut Plaintiff off and instructed him to put it in an e-mail detailing the incident. Plaintiff then immediately provided the e-mail account upon returning to his office that day.

19.     On or about June 12th 2006, Mr. John Lurz, Region Vice President, and Mr. Biberian called Plaintiff into a meeting to discuss "your behavior". After about 5 seconds it became clear that they did not want to discuss any alleged behavior, but wanted to talk about the sexual harassment charge with the EEOC. Plaintiff instructed them that he would not discuss anything about this case with them. Plaintiff then advised them they were violating the laws of the United States and violating company rules by their actions. They asked what laws they violating and Plaintiff instructed them that they were not to harass him about his EEOC complaint. Plaintiff then asked Mr. Lurz and Mr. Biberian if Human Resources had contacted them regarding the incident at the baseball game. They were unaware of the report. Plaintiff

quickly told them of the incident then cited our lack of African-Americans in employment and told them they have racial problems in the office. Mr. Lurz then threw me out of the office.

20.     On the morning of June 14th, 2006 Mr. Smith began trying to provoke Plaintiff to say the something wrong. Plaintiff refused to fall for the tactic. In the afternoon of June 14, 2006 Mr. Smith called Plaintiff into his office for yet another badgering session. His frustration growing he asked in a sarcastic way what changes Plaintiff would like to see made in the office. Plaintiff stated that he would like to see the end to the company's racist practices. Mr. Smith became enraged and told Plaintiff to wait in his office while he went and got Mr. Biberian. Plaintiff waited about 15 minutes then left to go to an appointment. About ½ hour later Plaintiff received a phone call from Mr. Smith telling him that he was being suspended pending an investigation.

21.     Two weeks later, Plaintiff was fired for pretextual reasons.

## COUNT ONE
## GENDER DISCRIMINATION- TITLE VII VIOLATION

Plaintiff realleges each and every paragraph of this Complaint.

22.     Defendant engaged in unlawful employment practices involving the Plaintiffs in violation of Title VII- 42 U.S.C. Section 2000e *et seq.* These practices include, but are not limited to, Defendant's discriminating against Plaintiff because of his gender.

23..     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his gender.

24.     The unlawful employment practices complained above were intentional and were performed by Defendant with malice or with reckless indifference to federal anti-discrimination laws that protect Plaintiff.

6

25. Defendant's policies, procedures and customs adversely impacted Plaintiff because of his gender.

26. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits and other physical damages.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VII

Plaintiff realleges each and every paragraph of this Complaint.

27. Defendant engaged in unfair discriminatory practices when it retaliated against Plaintiff for raising claims of gender discrimination and retaliation in violation of Title VII.

28. As a result of Defendant's retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, severe emotional distress, public humiliation, embarrassment, pain and suffering, loss of reputation, wage and benefit loss and other serious injuries as a result of Defendant's reprisal.

**WHEREFORE**, Plaintiff respectfully prays this Court:

a. Declares that the acts and practices complained of herein are in violation of Title VII.

b. Enjoin and permanently restrain these violations of Title VII in the Defendant's workplace.

c. Order Plaintiff's reinstatement to employment or, in the alternative, damages for wage and benefit loss.

d. Award Plaintiff compensatory damages for injuries suffered through each cause of action as a result of Defendant's illegal and tortuous conduct in an amount in excess of $50,000.00.

7

e.    Award Plaintiff punitive damages as provided by statute.

f.    Award Plaintiffs prejudgment interest, costs of this action, including reasonable attorney's fees as provided by statute.

f.    Grant Plaintiffs such other further relief as may be necessary and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS

Dated this / 7 of January, 2007.

HALUNEN & ASSOCIATES

Michael A. Johnson (#6181982)
415 North LaSalle Street
Chicago, Illinois 60610
Telephone: (312) 222-0660
mjohnsonlawyer@aol.com

Clayton D. Halunen (#219721-MN)
Christopher D. Jozwiak (#036797-MN)
220 South Sixth Street
Suite 2000
Minneapolis, MN 55402
Telephone: (612) 605-4098
Halunen@halunenlaw.com
Jozwiak@halunenlaw.com

8