IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE CROSTHWAITE, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) No. 07 C 0759 |
| | ) |
| KONICA MINOLTA, | ) Judge Ronald Guzman |
| | ) Magistrate Judge Ashman |
| Defendant. | ) |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT AT LAW

Defendant Konica Minolta Business Systems ("Defendant" or "Konica Minolta") answers the Complaint of Plaintiff Bruce Crosthwaite ("Plaintiff") as follows:

### JURISDICTION AND VENUE

**PARAGRAPH NO. 1:**

This is an action brought to remedy gender discrimination and retaliation which resulted in the alteration of the terms and conditions of Plaintiffs'[*sic*] employment and to remedy injuries suffered by the Plaintiffs(sic) pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq.* ("Title VII").

**ANSWER:**

Defendant admits that Plaintiff invokes Title VII of the Civil Rights Act of 1964 ("Title VII") as the basis for his claims in this matter. Defendant denies the remaining allegations in Paragraph 1 of Plaintiff's Complaint, and specifically denies that it discriminated against him on the basis of his gender, or that it retaliated against him in violation of Title VII.

**PARAGRAPH NO. 2:**

Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. 2000e (f) and (f) *et seq.*

**ANSWER:**

Defendant admits that Plaintiff invokes Title VII as the basis for seeking injunctive and declaratory relief and damages, but specifically denies that Plaintiff is entitled to any such relief or damages, or any other form of relief based on the actions of Defendant. Defendant denies the remaining allegations in Paragraph 2 of the Complaint.

**PARAGRAPH NO. 3:**

The jurisdiction of this Court is invoked pursuant to 42 U.S.C. Sec. 2000e-(b) and 28 U.S.C Sec. 1331.

**ANSWER:**

Defendant admits that Plaintiff attempts to invoke Title VII and 28 U.S.C. § 1331 as the basis for this Court's jurisdiction in this matter. Defendant avers that it does not challenge the jurisdiction of this Court over the subject matter of this action, but denies that Plaintiff is entitled to any relief under Title VII.

**PARAGRAPH NO. 4:**

Plaintiff has exhausted all administrative remedies. Plaintiff has been issued Right to Sue letters from the EEOC for his charges of discrimination and retaliation.

**ANSWER:**

Defendant admits that it received copies of three "Right to Sue" letters from the Equal Employment Opportunity Commission ("EEOC") regarding the charges filed against it by Plaintiff. The remaining allegations in Paragraph 4 of the Complaint either state legal conclusions requiring no answer by Defendant, or allege facts as to the truth of which Defendant is without knowledge or information sufficient to form a belief.

## PARTIES

### PARAGRAPH NO. 5:

Plaintiff Bruce Crosthwaite is a male who resides in the County of DuPage, State of Illinois.

### ANSWER:

Defendant admits that Plaintiff is a male, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Complaint.

### PARAGRAPH NO. 6:

Defendant Konica Minolta, upon information and belief, is an Illinois corporation and is subject to jurisdiction by this Court. Defendant is an employer as defined by Title VII.

### ANSWER:

Defendant avers that it is a New York corporation doing business in Illinois, and does not object to the jurisdiction of this Court over Defendant in this matter. The remaining allegations in Paragraph 6 state legal conclusions requiring no response from Defendant.

## FACTS

### PARAGRAPH NO. 7:

Plaintiff was hired by Konica Minolta Business Solutions on or about August 30, 2004 as a Print Production Specialist. His duties included calling on all commercial printers, quick printers, graphic arts shops, and mail houses and selling KMBS equipment and services.

### ANSWER:

Defendant admits that it hired Plaintiff as a Major Account Production Print Specialist on or about July 26, 2004, and that in his position, Plaintiff had the opportunity to call on the listed types of entities in an attempt to sell them Defendant's products and services. Defendant denies the remaining allegations in Paragraph 7 of the Complaint.

**PARAGRAPH NO. 8:**

Plaintiff reported directly to Mickey Smith – Manager of Major Accounts. Mr. Smith reported to Armen Biberian – Business General Manager.

**ANSWER:**

Defendant admits that Plaintiff reported directly to Michael Smith, Branch Sales Manager at the Downers Grove Branch. Defendant further admits that Armen Biberian, Branch General Manager at the Downers Grove Branch, supervised the other managers, including Michael Smith, at that branch. Defendant denies the remaining allegations in Paragraph 8 of the Complaint.

**PARAGRAPH NO. 9:**

After approximately 8 weeks of employment it became apparent to Plaintiff that Mr. Biberian had a relationship with one of his direct reports, Dana Drury. Through conversations with other employees, Plaintiff discovered the relationship had been going on for a number of years.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint regarding Plaintiff's alleged beliefs, but Defendant specifically denies that Armen Biberian and Dana Drury have or have had a romantic or inappropriate non-professional relationship at any time.

**PARAGRAPH NO. 10:**

Plaintiff's assignment was unique in the company in that he was hired to call on a vertical market as defined by KMBS corporate. Plaintiff's newly created position was the only position in the company to call on a vertical market. After his start date Plaintiff was notified by Mr. Biberian that he would not be allowed to solicit all designated accounts in his vertical market. Of the 70+ people around the United States who shared Plaintiff's title, he was the only specialist who was restricted in this manner. Mr. Biberian instead allowed many of Plaintiff's accounts to remain under the jurisdiction of other sales teams. Ms. Drury was the primary beneficiary of this decision.

4

**ANSWER:**

Defendant admits that Plaintiff, like all other Production Print Specialists at the Downers Grove branch, was assigned a vertical market target list focusing on print-for-pay or commercial print companies to whom Plaintiff was permitted to sell Defendant's full product line. Defendant admits that Plaintiff's initial assignment list was defined by Branch General Manager Armen Biberian and contained several hundreds of potential accounts, and that from these accounts, Plaintiff selected those on which he wished to focus his efforts. Defendant denies the remaining allegations in Paragraph 10 of the Complaint.

**PARAGRAPH NO. 11:**

At a March 8, 2006 branch meeting, Mr. Biberian required the entire KMBS workforce to watch a 20 minute slide show highlighting the 10 year employment anniversary of Ms. Drury. Knowing the relationship Mr. Biberian had with Ms. Drury, Plaintiff and others found the episode to be extremely inappropriate. Furthermore, Mr. Biberian re-assigned a valuable support person, digital support specialist Steve Hart, to create this slideshow in lieu of his normal duties. This re-assignment of Mr. Hart to perform these duties directly affected Plaintiff's ability to perform his job. It is estimated that Mr. Hart spent over 40 hours creating the slide show celebrating Mr. Biberian's girlfriend.

**ANSWER:**

Defendant admits that at a branch meeting in early 2006, Dana Drury's accomplishment of her tenth consecutive year at the "President's Club" sales level was commemorated with a slideshow presentation. Defendant avers that the pictures for the slideshow presentation were assembled on a compact disk by Armen Biberian with assistance from Dana Drury's husband, and that Steve Hart volunteered to convert the compact disk of pictures into a digital slideshow at his home over the weekend, using a computer application owned by Hart's wife. Defendant denies the remaining allegations contained in Paragraph 11 of the Complaint.

**PARAGRAPH NO. 12:**

On March 9, 2006 Plaintiff complained to his manager, Mr. Smith, that the Biberian-Drury relationship was adversely affecting Plaintiff's ability to perform his job, including generating sales that were taken from him. Furthermore, Plaintiff voiced his objections of Mr. Biberian forcing staff to watch the inappropriate slideshow celebrating his girlfriend. Finally, Plaintiff voiced his objections of Mr. Biberian inappropriately assigning his support staff to create the slideshow. Plaintiff advised Mr. Smith that he would no longer sit by and pretend the relationship between Mr. Biberian and Ms. Drury did not negatively affect his job, specifically costing Plaintiff thousands of dollars in sales as a result of his accounts being given to Ms. Drury.

**ANSWER:**

Defendant admits that in March or April of 2006, Plaintiff expressed to several employees at the Downers Grove branch his professed belief that Armen Biberian and Dana Drury were having an affair, and that Plaintiff maintained an increasingly negative attitude toward his co-workers and several aspects of his job, which he exhibited to Michael Smith and others on a daily basis. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 of the Complaint, but specifically denies that Biberian and Drury were engaged in a romantic or inappropriate relationship at any time, or that Biberian's working relationship with Drury adversely affected Plaintiff's employment.

**PARAGRAPH NO. 13:**

On March 14, 2006, 5 days after Plaintiff's objections to Mr. Smith, he was issued a Written Warning citing "behavior/conduct infraction" and "poor attitude". The written warning did not specifically state what the "behavior/conduct infraction" was or when it took place. The supposed transgressions were completely fabricated. Interestingly, several weeks later Plaintiff won a national award for sales performance for the month of March. Further, Plaintiff was highly ranked nationally in the sales category for the entire 2005 fiscal year.

**ANSWER:**

Defendant admits that on March 14, 2006, Michael Smith issued Plaintiff a verbal warning, and that on March 17, 2006, Smith issued Plaintiff a written warning, both relating to

Plaintiff's declining call ratios and sales production, as well as his increasingly negative attitude toward Defendant and several of its employees. Defendant denies that Plaintiff's sales performance in March 2006 was acceptable, and avers that at the time Plaintiff was issued the warnings in March of 2006, he had only posted a single sale for the entire month, and that by the close of March 2006, over 85 percent of the sales dollars credited to Plaintiff for the month were generated in accounts for which Plaintiff received credit, but were for sales which he did not secure personally. Defendant admits that Plaintiff received a sales award for March of 2006, and avers that the award was based on the aforementioned sales for which Plaintiff was credited, but which he did not secure personally. Defendant admits that Plaintiff was a highly-ranked sales performer for Defendant in fiscal year 2005. Defendant denies the remaining allegations in Paragraph 13 of the Complaint.

**PARAGRAPH NO. 14:**

On or about April 1, 2006 while working at his desk performing his duties, Plaintiff overheard loud yelling and screaming throughout the branch coming from Mr. Biberian directed towards Mike Mattson. Seconds later, Mr. Biberian shouted, "if Bruce does not like it, he can get the fuck out of here". As Plaintiff was the only Bruce in the office, he immediately became concerned. He looked around and several co-workers looked at him and asked "what did you do"? [sic] Later that day, Plaintiff sent Mr. Biberian an email questioning his using my name in such a fashion. A few minutes later, Mr. Biberian came to Plaintiff's desk and asked to speak with him. The two walked into Mr. Smith's office (which was unoccupied at the moment). Plaintiff tried to shut the door behind him but Mr. Biberian instructed Plaintiff to leave the door open. He informed Plaintiff that he read his email and then claimed he could say anything he wanted about any subject he chose and that it was nobody's business but his because it was "my office to run as I choose" [sic]. Plaintiff again attempted to shut the door to the office but was ordered by Mr. Biberian to keep it open. Plaintiff requested that Mr. Biberian not use his name in such a way.

**ANSWER:**

Defendant admits that on March 7, 2006, Armen Biberian had a conversation in his office with Sales Manager Mike Mattson regarding an issue that Mattson was having with a customer account, but denies that the conversation between Biberian and Mattson had anything to do with

Plaintiff. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Plaintiff's alleged feeling of "concern", or any questions allegedly directed to him by his co-workers. Defendant admits that Plaintiff sent Biberian an email message regarding Biberian's conversation with Mattson, and that Biberian responded to Plaintiff's email by requesting to meet with him that day to talk to him about it. Defendant admits that Plaintiff and Biberian met in an office near Plaintiff's work area, and that Biberian asked Plaintiff to leave the door open during the meeting. Defendant denies the remaining allegations in Paragraph 14 of the Complaint.

### PARAGRAPH NO. 15:

On April 12th, 2006, Plaintiff met with the EEOC to report the retaliation.

### ANSWER:

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

### PARAGRAPH NO. 16:

On May 2nd, 2006 as a reward for his outstanding performance, Mr. Smith treated Plaintiff and three of his co-workers to a day at Wrigley Field. Before the game started, the group ran into a co-worker, Shannon Thompson, who had taken the day off work to attend the game with her African-American boyfriend. Shortly after leaving Ms. Thompson, Mr. Smith made the comment "Shannon likes her meat from the other side of the turkey". Plaintiff was appalled by the comment. One of our party suggest we "not go there" the subject changed.

### ANSWER:

Defendant admits that in May of 2006, Michael Smith, Plaintiff, and Shannon Thompson, attended a baseball game at Wrigley Field, and that Shannon Thompson's boyfriend attended as well. Defendant admits that Smith made a comment similar in substance to the quoted portion in Paragraph 16 of the Complaint. Defendant denies the remaining allegations in Paragraph 16 of the Complaint.

8

**PARAGRAPH NO. 17:**

On May 3rd, 2006 Mr. Biberian and Mr. Smith were made aware of the complaint Plaintiff filed with the EEOC. From this point forward, Plaintiff was subjected to hostility, scrutiny and criticism. Plaintiff was isolated from the management team and not invited to lunch meetings. His boss stopped returning his phone calls relating to work issues and began reprimanded [sic] Plaintiff for anything he could think of. Finally Mr. Smith, for no apparent reason, suggested that Plaintiff find a new job.

**ANSWER:**

Defendant admits that at some point after Plaintiff filed his first charge of discrimination on April 12, 2006, Biberian and Smith were made aware of the charge, but Defendant is without knowledge or information sufficient to form a belief as to the exact date when Biberian and Smith learned of the charge. Defendant denies the remaining allegations contained in Paragraph 17 of the Complaint.

**PARAGRAPH NO. 18:**

On or about May 21st, 2006 Plaintiff attempted to contact Dan Warwick, Vice President of Human Resources, to report Mr. Smith's inappropriate comment made at the baseball game. Due to scheduling problems, Mr. Warwick and Plaintiff were not able to speak until approximately June 6th, 2006. Plaintiff informed Mr. Warwick about Mr. Smith's conduct. Mr. Warwick immediately cut Plaintiff off and instructed him to put it in an e-mail detailing the incident. Plaintiff then immediately provided the e-mail account upon returning to his office that day.

**ANSWER:**

Defendant admits that at some time after May 10, 2006, Don Warwick, Defendant's Vice President of Human Resources, participated in a conference call with Plaintiff and Thomas Rogers McVeigh, Defendant's Director of Human Resources, regarding a complaint Defendant had received about Plaintiff from another employee on or about May 10, 2006. Defendant further admits that on May 26, 2006, Plaintiff sent Warwick an email requesting to discuss "a few matters" with him during the first week of June, 2006, and that a meeting between Warwick

and Plaintiff was scheduled for June 5, 2006, but never occurred due to a power outage on June 5 at Defendant's corporate offices where Warwick works. Upon information and belief, Defendant avers that the conference call regarding the May 10th complaint against Plaintiff was the only conversation Warwick had with Plaintiff regarding workplace complaints. Defendant denies the remaining allegations in Paragraph 18 of the Complaint.

**PARAGRAPH NO. 19:**

On or about June 12th 2006, Mr. John Lurz, Region Vice President, and Mr. Biberian called Plaintiff into a meeting to discuss "your behavior". After about 5 seconds it became clear that they did not want to discuss any alleged behavior, but wanted to talk about the sexual harassment charge with the EEOC. Plaintiff instructed them that he would not discuss anything about this case with them. Plaintiff then advised them they were violating the laws of the United States and violating company rules by their actions. They asked what laws they [sic] violating and Plaintiff instructed them that they were not to harass him about his EEOC complaint. Plaintiff then asked Mr. Lurz and Mr. Biberian if Human Resources had contacted them regarding the incident at the baseball game. They were unaware of the report. Plaintiff quickly told them of the incident then cited our [sic] lack of African-Americans in employment and told them they have racial problems in the office. Mr. Lurz then threw me out of the office.

**ANSWER:**

Defendant admits that on or about June 6, 2006, Plaintiff met with John Lurz and Armen Biberian at Plaintiff's request to discuss a customer service issue Plaintiff was having with one of his accounts. Defendant admits that during this meeting, Plaintiff referenced what he characterized as inappropriate and illegal behavior in the branch, but initially refused to elaborate on the alleged inappropriate and illegal behavior. Defendant admits that Lurz encouraged Plaintiff to report any allegedly inappropriate and illegal behavior internally so that Defendant could address his concerns, and Plaintiff responded that he was not interested in reporting the matter internally. Defendant admits that during the remainder of the meeting, Plaintiff raised concerns about, among other things, the comment referenced in Paragraph 16 of the Complaint. Defendant admits that Plaintiff then left the meeting and returned with a letter he told Lurz and

10

Biberian that he had sent to several external organizations and people, including the EEOC, the NAACP, and Jesse Jackson regarding the comment referenced in Paragraph 16 of the Complaint and the lack of African-Americans in Defendant's workforce. Defendant denies the remaining allegations in Paragraph 19 of the Complaint.

### PARAGRAPH NO. 20:

On the morning of June 14th, 2006 Mr. Smith began trying to provoke Plaintiff to say the [*sic*] something wrong. Plaintiff refused to fall for the tactic. In the afternoon of June 14, 2006 Mr. Smith called Plaintiff into his office for yet another badgering session. His frustration growing he asked in a sarcastic way what changes Plaintiff would like to see made in the office. Plaintiff stated that he would like to see the end to the company's racist practices. Mr. Smith became enraged and told Plaintiff to wait in his office while he went and got Mr. Biberian. Plaintiff waited about 15 minutes and then left to go to an appointment. About ½ hour later Plaintiff received a phone call from Mr. Smith telling him that he was being suspended pending an investigation.

### ANSWER:

Defendant admits that on or about June 15, 2006, Plaintiff initiated a confrontation with Michael Smith and then left the office, and that after consulting with Armen Biberian, Smith called Plaintiff later that afternoon and instructed him not to return to the office until the following morning. Defendant denies the remaining allegations contained in Paragraph 20 of the Complaint.

### PARAGRAPH NO. 21:

Two weeks later, Plaintiff was fired for pretextual reasons.

### ANSWER:

Defendant admits that on or about June 27, 2006, Plaintiff was informed that his employment with the Company had been terminated. Defendant denies the remaining allegations in Paragraph 21 of the Complaint.

### COUNT ONE
### GENDER DISCRIMINATION – TITLE VII VIOLATION

11

Defendant realleges each and every paragraph of this Answer.

### PARAGRAPH NO. 22:

Defendant engaged in unlawful employment practices involving the Plaintiffs [*sic*] in violation of Title VII – 42 U.S.C. Section 2000e *et seq.* These practices include, but are not limited to, Defendant's discriminating against Plaintiff because of his gender.

### ANSWER:

Paragraphs one (1) through twenty-one (21) are incorporated by reference as if fully set out herein. Defendant denies the allegations contained in Paragraph 22 of the Complaint.

### PARAGRAPH NO. 23:

The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his gender.

### ANSWER:

Defendant denies the allegations contained in Paragraph 23 of the Complaint.

### PARAGRAPH NO. 24:

The unlawful employment practices complained above were intentional and were performed by Defendant with malice or with reckless indifference to federal anti-discrimination laws that protect Plaintiff.

### ANSWER:

Defendant denies the allegations contained in Paragraph 24 of the Complaint.

### PARAGRAPH NO. 25:

Defendant's policies, procedures and customs adversely impacted Plaintiff because of his gender.

### ANSWER:

Defendant denies the allegations contained in Paragraph 25 of the Complaint.

### PARAGRAPH NO. 26:

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits and other physical damages.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 26 of the Complaint.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VII

Defendant realleges each and every paragraph of this Answer.

**PARAGRAPH NO. 27:**

Defendant engaged in unfair discriminatory practices when it retaliated against Plaintiff for raising claims of gender discrimination and retaliation in violation of Title VII.

**ANSWER:**

Paragraphs one (1) through twenty-six (26) are incorporated by reference as if fully set out herein. Defendant denies the allegations contained in Paragraph 27 of the Complaint.

**PARAGRAPH NO. 28:**

As a result of Defendant's retaliation against Plaintiff, Plaintiff has suffered, and continues to suffer, severe emotional distress, public humiliation, embarrassment, pain and suffering, loss of reputation, wage and benefit loss and other serious injuries as a result of Defendant's reprisal.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 28 of the Complaint.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

To the extent that Plaintiff alleges to have been harassed, his harassment claim(s) is/are barred by his failure to avail himself of the reporting procedure in Defendant's Policy Against Harassment.

### SECOND AFFIRMATIVE DEFENSE

To the extent Plaintiff claims discrimination which occurred more than 300 days before he filed his charge of discrimination with the EEOC, such claims are time-barred.

### THIRD AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiff's claims for damages in the form of loss of wages and benefits are barred by his failure to diligently seek other employment or to otherwise mitigate his damages.

### FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff purports to assert claims of discrimination under Title VII of the Civil Rights Act of 1964 that are not included in the charges of discrimination which Plaintiff filed with the EEOC, Plaintiff has failed to exhaust his administrative remedies.

### FIFTH AFFIRMATIVE DEFENSE

Defendant engaged in good faith efforts to comply with Title VII of the Civil Rights Act of 1964, and therefore cannot be held liable for punitive damages.

### SIXTH AFFIRMATIVE DEFENSE

Assuming, *arguendo*, that Plaintiff is able to establish that his sex or allegedly protected activity played any part in any decisions of which he complains in his Complaint, Defendant would have made the same decisions even in the absence of any unlawful consideration.

**WHEREFORE**, Plaintiff's Complaint should be dismissed against Defendant and Defendant awarded its attorneys' fees, costs and such other relief as the Court deems just and reasonable.

Dated: April 9, 2007       **KONICA MINOLTA BUSINESS SOLUTIONS, USA**

                 By: */s/ Cathryn E. Albrecht*
                    One of Defendant's Attorneys

Cathryn E. Albrecht
Laura K. Kendall
Jackson Lewis LLP
320 West Ohio Street, Suite 500
Chicago, IL 60610
(312) 787-4949

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2007, the foregoing Defendant's Answer and Affirmative Defenses was electronically filed with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> Michael A. Johnson
> Michael A. Johnson & Associates
> 415 North LaSalle Street, Suite 203
> Chicago, Illinois 60610

and we served the following via regular U.S. Mail, postage prepaid:

> Clayton Halunen
> Halunen & Associates
> 220 South Sixth Street, Suite 2000
> Minneapolis, Minnesota 55402

/s/ *Cathryn E. Albrecht*
Cathryn E. Albrecht